The next case this morning is number 520362 people versus Cartwright arguing for the appellant. Lucas Cartwright is Gil Lenz, arguing for the appellate people of the state of Illinois is Hiram Fenjack. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning. Good morning. Prepared to proceed? Yes. Yes. Appellant may proceed. Thank you, Your Honor. And good morning to the court and to counsel. This is Gilbert Lenz from the DePaul Legal Clinic on behalf of Lucas Cartwright. Your Honor, the trial court correctly found in this case that the methamphetamine methamphetamine was recovered pursuant to an appellate Cartwright's motion to suppress that evidence after finding that the discovery of the drugs was would have been an inevitable result of valid police procedures. That finding, however, was based on an incorrect finding by the court that this encounter was consensual prior to the physical search. Because this encounter was never consensual and was not supported by either probable cause or reasonable suspicion, the trial court should have suppressed the evidence. And because the state cannot prevail on retrial without that suppressed evidence, this court should reverse Cartwright's conviction. Your Honor, this encounter was never consensual. The question in this case, because there was no probable cause or reasonable suspicion, the question here is whether a reasonable person in Cartwright's shoes would have felt free to ignore the police presence, to ignore their requests, and to go about his business. On the unique facts of this case, the answer to that question is no. The record shows that the officers watched Lucas Cartwright for more than an hour, and they never saw him do anything illegal. Despite having no probable cause or reasonable suspicion, two officers then chose to approach Cartwright for questioning. Didn't they observe him going back and forth between cars? They observed him going to the parking lot, to a car, and back into the store. And then to the parking lot again, and to the store? I think possibly, yes, there were multiple times over the course of that hour, he would go into the store and go back to the parking lot, but there was no... Yeah, do you know how many times that happened? I don't think the record is specific on the exact number of times. I believe the police were several times, multiple times. There were other people in the parking lot, too, as well. The most important point, though, Your Honor, is that the police never saw Cartwright do anything illegal during that time. And it is, of course, not illegal to enter a commune store. So it has to be, they have to see something illegal? Is that what you're saying? Well, illegal or something that creates a reasonable suspicion of criminal activity. And they had neither in this case. If you're playing a video game in a convenience store, and you take a break, it's not suspicious to walk to your car and then go back. That's to your car, but it was to other cars. Isn't that correct? I don't believe the officer testified that Cartwright was seen walking to other people's car or her car. How many cars did he have at that time in the parking lot? The record doesn't specify how many cars were in the lot. I believe the officer testified that he saw Cartwright walk to the same car multiple times. The car that his friend, I believe, was in or was sharing. Something along those lines. The point, of course, is that he, the officer, even if observing Cartwright walking in the parking lot, never saw him do anything that was illegal or even reasonably suspicious. Excuse me, counsel. Was there a stipulation that there was no probable cause and no reasonable suspicion in this situation? Yes. Okay. Proceed on then. Thank you. Yeah. Thank you. So, despite the fact that there was no probable cause of reasonable suspicion, the officers chose to approach Cartwright for questioning. They did not do so in the parking lot nor in the store where there were other people present. Instead, they chose to approach him when he was alone in the windowless gaming room, isolated from other people. The two armed uniformed officers then stood between Cartwright and the only exit to that room. And without introduction or explanation, the first thing they did was ask him for his identification. Cartwright asked why they were asking for his identification. And crucially, at this point, your honors, the officers did not say that Cartwright was free to leave, that he was free to ignore their request. Instead, the officer told Cartwright specifically, we've been watching you for an hour and we think you're engaged in suspicious drug-related activity. At that point, and this is where the reasonable person standard comes in, no reasonable person in Cartwright's shoes at that point would have felt free to decline the officer's request for identification. No reasonable person would have felt free to say, I'm going to continue playing this video game. No reasonable person would feel free to walk around or through the officers to leave the room. At that point, Cartwright was seized and it was not, therefore, inevitable that the methamphetamine would be discovered due to valid police procedures. And the court should have suppressed that evidence. But even if this court finds that Cartwright's act of handing over the identification was consensual, the encounter became even less consensual at that point, because without warning or any admonition, the officers did not merely take Cartwright's identification, look at it and hand it back. They took his identification and the second officer left the room with it for several minutes. Cartwright was not told that the purpose of this was to run a warrant check, but that's exactly what happened. Cartwright never consented to handing over his ID for an extended amount of time, never consented to have it run for a warrant check. And therefore, even if handing over the ID was consensual, the encounter became non-consensual when the officers took the ID away from him and left the room with it. I've never heard of a case where you hand over your ID and say, but you can't do a warrant check. Is that what you're trying to say? No. The key here is not what Cartwright did or didn't do at that point. The key is what a reasonable person would believe when that happened. So a reasonable person, when an officer asked for ID, would believe they just want to look at the ID. Without further explanation from the officers, which was lacking here, no reasonable person would think that handing over the ID, that he was consenting to them taking it away from him out of the building for some unspecified amount of time to do something with it. And more importantly, your honor, no reasonable person at that point would have felt free to ask for the ID back or to leave without the ID. So at that point, especially considering that another officer was standing with Cartwright still in the gaming room at that point, um, Cartwright was seized under the Fourth Amendment when they took his ID out of the room. And again, that renders the discovery, the ultimate discovery of the drugs, uh, not inevitable. And in fact, pursuant to invalid police procedures and the court erred in denying Cartwright's motion to suppress. And again, this court should reverse his conviction. So then if you ever show your ID, you should never let the policeman leave with it, you should say, oh, you hit me and you can leave with my ID. The burden is not on the defendant to tell the police what they can and can't do. But you're saying that they can't do that. Is that what you're saying? I'm saying under the circumstances of this case where Cartwright was alone in a windowless room with officers standing between him and the only exit, it was a non-consensual encounter when they told him before he handed over his identification that he was suspected of criminal activity. No reasonable person at that point would have felt that this was a casual encounter that he was free to end at any time. At that point, a reasonable person would think he was under police investigation and would have felt that compliance with the request was required. And this applies both to handing over the ID and to the moment when the police took the ID out of the building. The question is not whether Cartwright demanded the ID back or put some limit on his consent. The question is what a reasonable person would have felt at that moment. And no reasonable person would have felt that he was free to end the encounter either at the request of identification or when they took the ID out of the building. So for those reasons, your honors, the trial court erred in denying the motion to suppress. And because the state cannot prevail without that court should reverse Cartwright's conviction. Thank you. Justice Moore? Well, there wasn't any movement of him from a public to a private location though, was there? By the police? Right. Right. Yeah, they saw him in the parking lot, they saw him in the store, but they chose to confront him when he was alone in the windowless gaming room, isolated from other people. And just the Smith case, that's a factor in weighing in favor of finding that this encounter was non-consensual. They certainly could have. But they didn't restrain him or touch him? They did not restrain him or touch him, but physical restraint is not necessary to find that encounter is non-consensual when circumstances are present as in this case, where, and I'm seeing I'm out of time, your honor, if I finish my answer. You can continue. Yeah. Circumstances in this case, just like the cases that we cite, Gerner, Kavitin, Smith, and Mitchell, none of those cases involved physical touching or shows of physical force. But in each of those cases, the encounters were still found to be non-consensual because of the specific facts where defendants were isolated, were blocked in some manner. We're told most suspects of criminal activity. No reasonable person under those circumstances would feel free to leave. Counsel, did the trial court make a specific finding that the defendant in this case was not restricted? The court did note that there were no physical restraints of Cartwright, that there were no guns drawn, those factors. And there's no question that those are factors that a court should consider. But those, the analysis, and those are the Mendenhall factors, those factors are not limiting, like this, they're not the exclusive factors this court should consider. It's under, it's a totality of the circumstances test and a reasonable person standard and no reasonable person under in Cartwright's shoes would have felt free to decline the police requests in this case. Thank you, Justice Welch. No further questions. Justice Moore? No further questions. The state may, I'm sorry, state may respond. I will allow you additional three minutes if you need it. I think the 10 minutes should be fine. Thank you. Good morning, your honors. As we discussed in the last discussion, there is no argument on behalf of the state that the police had probable cause or reasonable suspicion. So this case basically hinges on the question of consent and whether this was a coercive encounter. And the trial court correctly found that it was consensual, at least up until the point of the search. The court went through the four Mendenhall factors, which are not, you know, exclusive to the determination, but they are important factors. The trial court found that as far as the threatening presence of the officers, it was, well, this was in a small room, enclosed room. It was also attached to a convenience store that had a number of people already in there. So it's certainly, I would say it was a public place. There was no displays of weapons or anything of that nature, no physical contact, um, no use of language indicating that a defendant was not free to leave. As far as the question... Were they in uniform with their guns on? Yes, they were. And as far as the questioning, the cases that the defendant cites, the questioning was much more particularized, indicating that the police were investigating a specific crime. As far as Gurna and Kevitan, in this case, they just came in and said, you know, this location is the site of frequent drug activity. We've seen some activity on your part that we'd like to look into. So they weren't accusing him of anything specific. And he even asked, you know, what do you have probable cause? So he was aware of the situation. He still consented to turn over his identification. Let me ask you this, counsel. Okay, if we're going to basically, for the point of argument, assume that he consensually turned over his ID. Was there something that the officers could point to that incited a reasonable suspicion from then on for them to go do a records check? Or anything in the record to indicate that there was something there? Okay, I voluntarily gave you my ID. You know who I am. But for some reason, you look at this ID and it causes you to investigate further. Was there some reasonable suspicion aroused as a result of viewing the identification? No, there wasn't a reasonable suspicion aroused. I believe that the officer, it was just part of some extent their standard operating procedure that, you know, they check the ID and then they want to run a warrant check on it. And as far as retaining the ID, that doesn't automatically transform the encounter into a seizure. It's just one factor to consider. I've cited the Ahmed case where the defendant basically made the same argument as the defendant does in this case. And in the Seventh Circuit Court found that a brief retention of an individual's identification, given the other court used the Mendenhall factors as part of their analysis, and they found that the brief retention of the ID did not automatically transform the encounter into a seizure. The trial court viewed the consent to provide the ID and the warrant check as part of the same transaction basically. And they were going to, even prior, even if they hadn't conducted the search, they were going to run the warrant check and they would have found the outstanding warrants and arrested the defendant and then found the contraband on him. So, you know, for those reasons, the state would argue that the encounter was consensual. And the defendant has argued that, you know, that they somehow blocked the defendant in the room. But the cases he cites, like Gurna, for example, was in a vehicle. The officer is surrounded on both sides. Vehicle is a much more constrained space. The individuals in the car were much more restricted in their movements. The police were asking specific questions about an open beer bottle, indicating to the defendant in that case that they were investigating a specific crime, which would indicate that the defendant was not free to leave. That didn't occur in this situation. In Kevaton, the police's approach was much more aggressive. The officer saw the defendant made a U-turn across traffic, jumped out and said, basically, something to the effect, I know you have drugs on you. So, again, it was a very specific accusation, indicating... Wasn't this pretty specific? He asked, you know, why are you bothering me? And they say, well, you know, meth and gambling go hand in hand or something to that effect. That was pretty specific, wasn't it? I would say it was more a general description of that particular location was a high crime area. And they saw that he was behaving in a way that aroused their suspicion. And they specified the specificity of the other cases. I believe it's the Mitchell case also. Again, the police, not Mitchell Smith, I'm sorry. The police followed the defendant into a darkened alley, rode past them on their bicycle, made a U-turn and then approached him. One of the officers had his hand on his gun and specifically asked him, do you have any weapons on your person? So, again, it was a much more threat under the Mendenhall factors. That's much more threatening approach by the officers and a much more restrictive situation that we have here. Again, this is in a public place. The room, again, was separated from the convenience store, which had people in it. So, because the defendant has failed to establish that this was non-consensual search, we would ask that you affirm the trial court's denial of the defendant's motion to suppress. Justice Welch? No question. Justice Moore? No questions. Counsel? Yes, thank you, Your Honors. On the Smith case, I think it's actually quite analogous to this one. In Smith, the officers waited until the defendant entered an alley. They could have confronted him on the street where there were more people around, but they waited until he was isolated in an alley and then blocked his path in one direction. That's nearly identical to the facts here where officers confronted Cartwright when he was alone in the gaming room and then stood between him and the only exit. While the officer in Smith did have his hand on his gun, it should be noted they were investigating a recent nearby shooting. The question is not whether an officer in that circumstance would be reasonable to have his hand on his gun. The question is whether a reasonable person in Smith's position would have felt that he was free to ignore the police request at that case where the facts were nearly identical. No reasonable person would have felt that they were free to ignore the police presence when they were told that they were suspected of criminal activity. There's no need, there's no case law saying that the police have to have to tell the defendant that they're suspected of a specific crime. When an officer says that we've been watching you for an hour, this is a drug high drug area with a lot of meth and we think you're engaged in suspicious activity, any reasonable person at that point would think that they were under police investigation. They would not feel free to go about their business, to turn around and keep playing the video game, to walk around the officers and leave the room. That encounter is non-consensual. That is an acquiescence to police authority, even without physical touching or drawing of weapons. Finally, your honors, on the Ahmaud case cited by the state, that's a very different situation. It shows that each of these cases depends on the unique facts of the case. In Ahmaud, crucially, the defendant was told repeatedly that he was free to leave. The officer was actually in his car and called the defendant over and asked if he would be willing to answer some questions, provide information, but told him repeatedly he was free to leave. Anything the defendant did after that point was plainly consensual under the fourth amendment in stark contrast to what happened here. For all those reasons, your honors, the trial court erred in denying Cartwright's motion to suppress this evidence and this court should reverse his conviction. I'd like to ask you a philosophical question. Substantial portions of our population live in what would be determined to be by some as high crime areas. Whole cities, for instance, East St. Louis, where I'm from, might be mistakenly designated as being a high crime area. So law enforcement could use this to basically violate fourth amendment rights of people who are doing things that otherwise might not arouse suspicion or they might not be able to allege they've aroused suspicion, but these harmless actions coupled with the higher crime area designation give people or courts a leniency to proceed to basically give the officers a lot more leeway than they would have in a non-high crime area or something designated as a non-high crime area. What do you see the long-term effects of procedures like this where officers are basically proceeding under that premise of this being a high drug area, high crime area, no reasonable suspicion, no probable cause, approach someone, ask them for their ID, and they comply and then proceed to run a record check. Do you see any fourth amendment problems here? Well, I certainly do, Your Honor. Of course, everything you just said about whether you consider it a high crime area in the analysis would be relevant to a reasonable suspicion analysis. So if this case hinged on whether the officers had reasonable suspicion of criminal activity, then everything you just said would be part of our discussion here today. Here, we don't even get that far because it's undisputed, regardless of the fact that this was a so-called high crime area. It's undisputed. There was no probable cause or reasonable suspicion. So the state had a burden to show that this was a consensual encounter. And courts have been very clear that when they say consensual, they mean that a person approached by the police under these circumstances would feel free to ignore the police, ignore them. And under some cases, like Ahmaud, where they're told that they're free to leave. And I'm sorry, I'm out of time, if I may just quickly wrap up. You may proceed. Thank you. In Ahmaud, where they're told they're free to leave, courts find that that defendant, a reasonable person, would feel free to ignore the police. But here, when the defendant's isolated, when he's told he's suspected of criminal activity, no reasonable person would have felt free to ignore the police presence. And that's why this was non-consensual. I'm sorry. Yeah. Thank you. I'd like to give the state an opportunity to respond if it might wish. Yes. Again, we're not arguing that there was reasonable suspicion or probable cause. The fact that it was a high crime area would not be a detention just on those grounds alone. We're just arguing that this particular convenience store apparently was the site of a lot of illicit drug activity. So the officers were on the lookout and they wanted to talk to the defendant and find out who he was. Again, there's no argument that they had reasonable suspicion. Our argument is just that the encounter was consensual. And for that reason, we ask you to uphold the trial court's motion. Thank you, Justice Welch. No questions. Justice Moore. No questions. Thank you all. This will be taken under advisement and a decision will be forthcoming.